05 CV 6708

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BONTE WAFFLERIE LLC, and DAVID L. HOEXTER, D.M..D., P.C. on behalf of itself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> VISA U.S.A., VISA INTERNATIONAL SERVICE ASSOCIATION, MASTERCARD INCORPORATED, and MASTERCARD INTERNATIONAL, <br><br> Defendants. | Civil Action No. <br><br>  RECEIVED JUL 26 2005 U.S.D.C. S.D.N.Y. CASHIERS <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs, individually and on behalf of a Class of all those similarly situated, bring this action for treble damages and injunctive relief under the antitrust laws of the United States against defendants Visa U.S.A., Visa International Services Association, MasterCard Incorporated, and MasterCard International (collectively "Defendants"). Plaintiffs allege as follows:

### NATURE OF THE CASE

1. Defendants and their co-conspirators entered into a combination and conspiracy to restrain trade in the general purpose credit card market by, *inter alia,* fixing, raising, maintaining or stabilizing "interchange fees" for use of Visa and MasterCard credit cards in the United States, and to establish, promulgate, and enforce ancillary rules and regulations designed to enforce and effectuate their unlawful combination and conspiracy.

2. This action is brought on behalf of all entities which paid interchange fees as part of a "merchant discount," both of which were artificially inflated as a result of Defendants'

1

wrongful conduct as alleged in this Complaint. Plaintiffs allege that Defendants' wrongful conduct as alleged herein violates Section 1 of the Sherman Act, 15 U.S.C. § 1, and that Plaintiffs and other members of the Class defined herein have suffered injury to their business and property as a result.

## JURISDICTION AND VENUE

3. Plaintiffs bring this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages and costs, including reasonable attorneys' fees, for injuries sustained by Plaintiffs and the Class as a result of Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, as alleged in this Complaint.

4. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337 and by Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

5. Venue is proper in this Judicial District pursuant to Sections 4, 12 and 16 of the Clayton Act 15, and U.S.C. §§ 15(a), 22 and 26 and 28 U.S.C. § 1391(b), (c) and (d), because during the Class Period (defined below) the Defendants transacted business, were found, or had agents in this District, and because a substantial part of the events giving rise to Plaintiffs' claim occurred, and a substantial portion of the affected interstate trade and commerce described below, has been carried out in this District.

## DEFINITIONS

6. "General Purpose Cards" include credit cards and charge cards. These cards are payment vehicles that enable consumers to make purchases from multiple unrelated merchants without immediately accessing or reserving funds.

7. "Credit Cards" are general purpose cards which give borrowers a revolving line of credit and let them borrow against it, carrying a balance with an agreed-upon interest rate.

2

8. A "Member Bank" is a bank that is a member of the Visa and/or MasterCard associations, and issues Visa and/or MasterCard general purpose cards to its customers, and/or acquires payment transactions from merchants.

9. A "Cardholder" is a person or business that has been issued a general purpose card.

10. "Credit Card Network" means a group of multiple banks which are interconnected by electronic or telecommunications means, to one or more computers, processors or switches for the purpose of providing credit card services to the Cardholder and retailer customers of the member banks.

11. "Acquiring Bank" means a member of Visa and/or MasterCard that acquires payment transactions from merchants and acts as a liaison between the merchant and the credit card network to assist in processing the payment transaction.

12. "Issuing Bank" means a member of Visa and/or MasterCard that issues Visa and/or MasterCard branded credit cards to consumers.

13. "Person" includes any individual, partnership, corporation, association or other business or legal entity.

14. "Class Period" means the period from January 1, 2004 to the present.

**PLAINTIFFS**

15. Plaintiff Bonte Wafflerie LLC is a Pennsylvania Limited Liability Company with its principal place of business in Philadelphia, Pennsylvania. During the Class Period Plaintiff Bonte Wafflerie LLC paid substantial merchant discount fees, including interchange fees, which were artificially fixed and inflated as a result of Defendants' conspiracy as alleged herein, and has been injured in its business or property as a result.

3

16.     Plaintiff David L. Hoexter D.M.D., P.C. is a Professional Corporation with its principal place of business in New York, NY. During the Class Period Plaintiff David L. Hoexter D.M.D., P.C. paid substantial merchant discount fees, including interchange fees, which were artificially fixed and inflated as a result of Defendants' conspiracy as alleged herein, and has been injured in its business or property as a result.

## DEFENDANTS

17.     Visa U.S.A. is a Delaware membership corporation with its principal place of business in Foster City, California. Visa U.S.A. is organized as an open joint venture and is owned by its member banking institutions. Visa U.S.A. is a member of Visa International and is the only Visa International member operating in the United States. Visa U.S.A. licenses the Visa brand from Visa International and sublicenses the Visa brand to its issuing member banks.

18.     Visa International Service Association is a Delaware membership corporation with its principal place of business in Foster City, California. Its members include both individual banks and "group members," such as Defendant Visa U.S.A. and Visa Canada. Visa International owns the "Visa" brand name and licenses that brand to its members, including to Defendant Visa U.S.A. Visa International is divided into six geographical regions, and each region is entitled to elect a minimum of two and maximum of eight representatives to Visa International's 26-member Board of Directors. Defendant Visa International has ultimate authority over Defendant Visa U.S.A.

19.     Unless otherwise stated, the term "Visa" as used in this Complaint refers to both Visa U.S.A. and Visa International.

20.     MasterCard Incorporated is a Delaware corporation with its principal place of business in Purchase, New York.

4

21. MasterCard International Inc. ("MasterCard") is a Delaware membership corporation with its principal place of business in Purchase, New York. It is the principal operating subsidiary of Defendant MasterCard Incorporated.

22. Unless otherwise stated, the term "MasterCard" as used in this Complaint refers to both MasterCard Incorporated and MasterCard International. The principal members of MasterCard are banks and other domestic and foreign financial institutions some of which, among other things, are licensed to issue MasterCard branded credit cards.

23. The acts alleged in this Complaint were authorized, ordered and performed by Defendants' respective officers, directors, employees, agents, members or representatives while actively engaged in the management, direction, control or transaction of their business or affairs.

24. Various other persons, firms or corporations not named as defendants in this Complaint have participated as co-conspirators with each of the Defendants in the illegal activities charged in this Complaint and have performed acts and made statements in furtherance of the illegal combination and conspiracy.

25. As a direct and proximate result of Defendants' unlawful and intentional concerted action, as alleged in this Complaint, Plaintiffs and the members of the Class have been injured in their businesses or property.

## INTERSTATE TRADE AND COMMERCE

26. During all or part of the Class Period, each of the Defendants, directly or through their affiliates or subsidiaries, sold network services for credit cards in a continuous and uninterrupted flow of interstate commerce to Plaintiffs and members of the class located throughout the United States.

27. At all relevant times the Defendants used numerous means and devices to effectuate the actions alleged herein, including interstate telecommunication lines, and other forms of communications.

28. The activities of Defendants and their co-conspirators, as described herein, were within the flow of and had a substantial effect on interstate commerce.

## RELEVANT MARKET

29. The relevant market for this action is the market for network services associated with general-purpose credit cards. The relevant geographic market is the United States. In this market, the sellers are the Defendant credit card networks and their member banks, and the buyers are primarily retail merchants. The interchange fees charged by Defendants, and/or their member banks, comprise a substantial portion of the price paid by such merchants to receive payment for a transaction associated with a credit card. Retail merchants pay billions of dollars every year to purchase network services in the relevant market.

30. A seller that was the only provider of network services associated with general purpose credit cards in the United States could raise interchange and merchant discount fees to levels substantially above the competitive level, without losing so much business as to make the fee increases unprofitable. Retail merchants cannot substitute payment methods (such as cash, checks, debit cards or charge cards) for general purpose credit cards because of the importance of such cards to their customers.

31. At all relevant times, Defendants Visa and MasterCard have held substantial market power in the relevant market. This market power is demonstrated through: (1) their ability to raise interchange fees without losing business to other general purpose credit cards, or payment methods other than general purpose credit cards; (2) their ability to discriminate in

price among different classes of retailers based, in part, on each class's ability to resist higher interchange fees; and (3) their ability to shift credit card usage from standard credit cards (with historically increasing interchange fees) to premium credit cards, with even higher interchange fees.

32.     There are significant barriers to entry in the market for network services associated with general purpose credit cards. No company has entered the market since 1985. Entry is estimated to cost over $1 billion, in large part due to the problem of developing and establishing a network of retailers without an existing network of cardholders who will not use cards that are not accepted by a large network of retailers.

## CLASS ACTION ALLEGATIONS

33.     Plaintiffs bring this action on its own behalf and as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class:

> All persons in the United States (excluding Defendants and their present and former parents, predecessors, affiliates, and subsidiaries, and excluding governmental entities) who paid merchant discount fees, including interchange fees, to Visa and/or MasterCard member banks at any time between January 1, 2004 and the present.

34.     The Class is so numerous and geographically dispersed that joinder of all members is impractical. Plaintiffs believe that there are at least hundreds of thousands of class members who paid merchant discount fees, including interchange fees, during the Class Period. The exact number and identities of the class members are presently unknown to Plaintiffs but can be ascertained through discovery of information in the exclusive control of Defendants.

35.     There are questions of law and fact common to the Class, including but not limited to:

  a. Whether Defendants and their co-conspirators combined or conspired to raise, fix, maintain, or stabilize interchange fees and merchant discount fees at artificially high levels, and otherwise restrain trade in the market for credit card network services;

  b. Whether Defendants possess and exercise market power in the market described in this Complaint;

  c. The duration and extent of Defendants' combination or conspiracy alleged in this Complaint;

  d. The methods used by Defendants and their co-conspirators to accomplish their combination or conspiracy;

  e. Whether Defendants' conspiracy was a violation of Section 1 of the Sherman Act;

  f. The effect upon and the extent of injuries sustained by Plaintiffs and other members of the Class, and the appropriate type and/or measure of damages; and

  g. Whether Plaintiffs and the other members of the Class are entitled to injunctive relief.

  36. Plaintiffs are members of the Class, Plaintiffs' claims are typical of the claims of the Class members, and Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of class action antitrust litigation.

  37. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

38. Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

39. The questions of law and fact common to the Class members predominate over any questions affecting only individual members.

40. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Class is readily definable and is one for which records exist. Prosecution as a class action will eliminate the possibility of repetitious litigation, while also providing redress for claims too small to support the expense of individual complex litigation.

## FACTUAL ALLEGATIONS

41. Visa and MasterCard operate the two largest credit card networks in the United States, through which they facilitate the exchange of funds and payment of fees between merchants, acquiring banks, issuing banks and consumers.

42. Visa and MasterCard are owned by the numerous banks that are the members of their networks. All of those banks, as a condition of membership in the networks, agree to abide by the policies and regulations of the respective networks, including the policies and regulations relevant to this Complaint.

43. The Visa and MasterCard associations have virtually identical member banks and nearly every major bank in the United States is or was a member of both the Visa and MasterCard associations during the relevant period. Since 1975, almost all significant card-issuing member banks have become owners of both Visa and MasterCard. Most of these member banks have an ownership interest in both the Visa and MasterCard associations. Despite this overlap in membership and ownership, neither Visa nor MasterCard enforces the safeguards

necessary to prevent one association from obtaining confidential competitive information about the other.

44.     As a result, Visa and MasterCard, through their member banks, jointly set uniform interchange fees for each of several classes of merchants, which are imposed on those merchants for credit card transactions. All such fees are fixed at the network level by the networks' pricing groups, the recommendations of which are summarily approved by the networks' respective board of directors. No two-member banks negotiate interchange fees among themselves.

45.     Acquiring banks charge merchants a merchant discount fee for every credit card transaction facilitated by the credit card networks. Interchange fees are a substantial component of the merchant discount fees, and effectively act as a floor for merchant discount fees, as any acquiring bank that charges a merchant discount fee less than the interchange fee for any particular transaction would suffer a loss on the transaction.

46.     The imposition of fixed interchange fees is not necessary to Visa and MasterCard network operations.

## COUNT I
### *Per Se* Violation of 15 U.S.C. § 1

47.     Beginning no later than January 1, 2004, Defendants and their co-conspirators engaged in a continuing combination and conspiracy in unreasonable restraint of trade and commerce in the provision of credit card network services in *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

48.     Defendants' combination and conspiracy consisted of an agreement, understanding and concert of action among Defendants and their co-conspirators, the substantial terms of which were to raise, fix, stabilize and maintain at artificially high levels the interchange

fee and merchant discount fee which Defendants charged to merchants throughout the United States.

49. Defendants' combination and conspiracy had the following effects, among others:

    a. Interchange fees and merchant discount fees charged by member banks were raised, fixed, stabilized or maintained at artificially high and non-competitive levels;

    b. Merchants who purchased credit card network services from member banks, including Plaintiffs and other members of the Class, were deprived of the benefits of free and open competition in the market for those services;

    c. Price competition among Defendants, in the provision of credit card network services to merchants who purchased those services, was restrained, suppressed and eliminated.

50. Defendants' conduct was undertaken for the purpose of and with the effect of fixing prices and eliminating competition in *per se* violation of Section 1 of the Sherman Act.

51. As a direct and proximate result of Defendants' unlawful conduct as alleged herein, Plaintiffs and the other members of the class were not able to purchase credit card network services at prices determined by free and open competition, and consequently have been injured in their business and property in that, *inter alia*, they have paid more for credit card network services than they would have paid in a free and open competitive market. The damages sustained by Plaintiffs and the members of the Class are substantial, and their amount will be proven at trial.

52. Defendants' antitrust violation threatens continuing loss and injury to Plaintiffs and the other members of the Class unless enjoined by the Court.

11

## COUNT II
### Unreasonable Restraint of Trade in Violation of 15 U.S.C. § 1

53.     The collective establishment of interchange fees by Defendants and their member banks constitutes a combination and conspiracy in unreasonable restraint of trade. This combination and conspiracy consisted of an agreement, understanding and concert of action among Defendants and their co-conspirators, the substantial terms of which were to raise, fix, stabilize and maintain at artificially high levels the interchange fees and merchant discount fees which Defendants charged merchants throughout the United States.

54.     Defendants' conspiracy has had substantial effects on competition in the market for credit card network services, and has resulted in higher prices and lower output than would exist in the absence of that conspiracy. There is no competitive justification for Defendants' restraints and, even if there were, there are far less restrictive means of achieving those alleged justifications.

55.     Defendants' combination and conspiracy had the following effects, among others:

    a.     Interchange fees and merchant discount fees charged by member banks were raised, fixed, stabilized or maintained at artificially high and non-competitive levels;

    b.     Merchants who purchased credit card network services from member banks, including Plaintiffs and other members of the Class, were deprived of the benefits of free and open competition in the market for those services;

    c.     Price competition among Defendants in the provision of credit card network services to merchants who purchased those services was restrained, suppressed and eliminated.

56. Defendants' conduct was undertaken for the purpose and effect of fixing prices and eliminating competition in *per se* violation of Section 1 of the Sherman Act.

57. As a direct result of Defendants' unlawful conduct as alleged herein, Plaintiffs and the other members of the class were not able to purchase credit card network services at prices determined by free and open competition, and consequently have been injured in their business and property in that, *inter alia*, they have paid more for credit card network services than they would have paid in absence of this combination and conspiracy. The damages sustained by Plaintiffs and the members of the Class are substantial, and their amount will be proven at trial.

58. Defendants' antitrust violation threatens continuing loss and injury to Plaintiffs and the other members of the Class unless enjoined by the Court.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request:

A. That the Court determine that this action may be maintained as a class action and declare Plaintiffs as a representative of the Class, and direct that reasonable notice of this action be given to the members of the Class;

B. That Defendants' action alleged in this Complaint be adjudged and decreed to be in violation of Section 1 of the Sherman Act;

C. That Plaintiffs and the members of the Class be awarded damages, and where applicable treble, multiple and other damages as provided by law and determined to have been sustained by reasons of Defendants' antitrust violations;

D. That Defendants be enjoined from continuing the illegal course of conduct alleged in this Complaint;

E.  That Plaintiffs and the Class recover their costs of this suit, including reasonable attorneys' fees;

F.  That Plaintiffs and the Class be granted such other relief as the Court deems appropriate.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs and the Class demand a trial by jury of all issues so triable.

DATED: July 26, 2005

Respectfully submitted,

WOLF POPPER LLP

_____
Marian P. Rosner  (MR 0410)
845 Third Avenue
New York, New York 10022-6601
Tel:  (212) 759-4600
Fax:  (212) 486-2093

Robert S. Kitchenoff
Steven A. Asher
Weinstein Kitchenoff & Asher LLC
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
Tel:  (215) 545-7200
Fax:  (215) 545-6535

Robert D. Greenbaum
ROBERT D. GREENBAUM & ASSOCIATES, LLC
123 South Broadstreet, 28th Floor
Avenue of the Arts
Philadelphia, PA 19109
Tel:  (215) 772-5060
Fax:  (215) 772-5058